UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEBBIE JEAN LATITS, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
LASZLO JOHN LATITS, DECEASED,

                  Plaintiff,

                                                  Case No. 12-14306
      v.                                 Honorable Julian Abele Cook, Jr.

CITY OF FERNDALE POLICE OFFICER LOWELL
PHILLIPS,

                  Defendant.


## ORDER

In this 42 U.S.C. § 1983 action, the Plaintiff, Debbie Jean Latits, acting as the personal representative for the estate of Laszlo John Latits ("Decedent"), complains that the Defendant, Officer Lowell Phillips of the Ferndale, Michigan Police Department, violated the Decedent's constitutional rights by using excessive force while attempting to execute an arrest. This action, although initially filed in the Wayne County Circuit Court of Michigan on September 20, 2012, was subsequently removed to this Court on September 27, 2012 pursuant to 28 U.S.C. §§ 1441, 1331. Phillips has now moved for the entry of a judgment on the pleadings, as authorized by the Federal Rules of Civil Procedure.

I.

On June 24, 2010, the Decedent was stopped by a Ferndale police officer for a presumptive traffic violation. At a time thereafter, the police officer withdrew his weapon and pointed it toward the Decedent who then drove away. Several police officers followed the Decedent through several

streets in Detroit until the pursuit ultimately ended when the Decedent's car was pushed to the side of the road. The Defendant, thereafter exited his vehicle and approached the passenger side of Decedent's vehicle when its driver attempted to place his vehicle in reverse, ostensibly to leave the accident scene. However, Philips - presumably in an effort to thwart the Decedent's removal from the area - shot and fatally wounded him. It should be noted that the specific events of the chase, as well as the moments surrounding the shooting remain disputed by the parties.

In September 2012, the Plaintiff filed this lawsuit in Wayne County Circuit Court of Michigan, alleging claims of assault and battery and gross negligence. Phillips' motion for the entry of a summary disposition on the basis of governmental immunity was denied by the trial court. However, the Michigan Court of Appeals reversed on appeal, and directed the trial court to enter an order of a summary disposition regarding the state law claims. The Plaintiff, feeling aggrieved by this decision, filed a pleading wherein he sought leave to amend his complaint by adding an additional cause of action (to wit, excessive force claim under the Fourth Amendment). Despite Phillips's objections, the Plaintiff's motion was granted by the trial court. Phillips then filed a motion with the Michigan Court of Appeals, in which he requested a reversal of the decision by the trial court to permit the now-challenged amendment to the complaint. The state appellate court denied this request, noting that it lacked jurisdiction to address and resolve the claimed issues. Thereafter, Phillips initiated steps that brought about the ultimate removal of the issues in the state court to this Court. As a result, his motion for the entry of a judgment on the pleadings is now pending before this Court.

II.

A motion for the entry of a judgment on the pleadings pursuant to Rule 12 (c) may be treated

2

according to the same standard as a motion to dismiss under Rule 12(b)(6). *Mixon v. Ohio,* 193 F.3d 389, 399 (6th Cir.1999). Such a motion should be granted only "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (citation and internal quotation marks omitted). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (citation and internal quotation marks omitted). However, as with a 12(b)(6) motion, this assumption of truth does not extend to "true legal conclusions or unwarranted factual inferences." *Id.* at 581-82 (citation and internal quotation marks omitted).

When considering a 12(b)(6) or 12(c) motion, "documents attached to the pleadings become part of the pleading and may be considered" by the trial court. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10 (c)). "In determining whether to grant a Rule 12(b)(6) motion, the court [should primarily consider] the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (applying *Amini*, 259 F.3d at 502, in the context of a Rule 12(c) motion (citation and internal quotation marks omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the [Plaintiffs'] complaint and are central to [their] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental documents attached to the motion to dismiss do not automatically convert the pleading into one for summary judgment if the

3

documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

### III.

The Plaintiff submits that Phillips used excessive force when he fired his weapon and fatally wounded the Decedent without justification in violation of his Fourth Amendment rights which is actionable under 42 U.S.C. § 1983. In his motion for judgment on the pleadings, Phillips contends that the Plaintiff is barred from pursuing her excessive force claim on behalf of the Decedent under any of the following doctrines: (1) collateral estoppel, (2) the law of the case, and (3) Rooker-Feldman. Phillips disagrees, contending that he, as a law enforcement officer at the time of the claimed incident, is entitled to qualified immunity protection.

Phillips initially submits that the doctrine of collateral estoppel is an actionable defense against the Plaintiff's § 1983 claim because it is based on identical questions of fact that were addressed and resolved by the Michigan Court of Appeals wherein it held that Phillips had acted in good faith when the weapon was discharged by him in February 2010. On the other hand, the Plaintiff maintains that the doctrine of collateral estoppel is inapplicable because her excessive force claim does not represent a separate action. Rather, she asserts that his lawsuit is a part of the same case that includes her intentional tort claims against Phillips. She also submits that the questions of fact resolved by the Michigan Court of Appeals with regard to the intentional tort issues are not identical to the questions of fact that are relevant to resolving the excessive force claim because there are separate and distinct legal standards which govern each claim.

Under the doctrine of collateral estoppel, a federal court must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). As

4

a result, any preclusive effect of the Michigan Court of Appeals opinion must be analyzed under the state of Michigan's doctrine of collateral estoppel. *See McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005).

In Michigan, the doctrine of collateral estoppel requires a resolution of the following issues: (1) a question of fact which is essential to the judgment that was actually litigated and determined by a valid and final judgment; (2) the same parties had a full and fair opportunity to litigate the issue; and (3) there was a mutuality of estoppel. *Estes v. Titus*, 751 N.W.2d 493, 500 (Mich. 2008) (citing *Storey v. Meijer, Inc.*, 429 N.W.2d 169, 171 (Mich. 1988)).

In this case, collateral estoppel does not preclude the Plaintiff's § 1983 claim from being litigated because there is no evidence that a valid and final judgment has been rendered. The Michigan Court of Appeals reversed the trial court's ruling and remanded the case for the entry of a summary disposition in Phillips' favor. Thereafter, the Plaintiff amended the complaint by adding the § 1983 claim - an issue that was subsequently removed by Phillips to this Court.  *See Latits v. Officer Phillips*, 826 N.W.2d 190 (Mich. Ct. App. 2012). Thus, a review of the record reveals that (1) no final judgment was ever entered, and (2) the Plaintiff's excessive force claim is part of the same case that was initiated in the state court. Therefore, the doctrine of collateral estoppel cannot be utilized to serve as a bar to the Plaintiff 's prosecution of her § 1983 claim. *See Pac. Employers Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398-99 (6th Cir. 2002) (collateral estoppel inapplicable where case was removed before final judgment was entered).

Furthermore, the doctrine of collateral estoppel is inapplicable here because the questions of fact, as found by the Michigan Court of Appeals, are not essential to a resolution of the Plaintiff's § 1983 claim. *See id.* Whether an officer is entitled to governmental immunity under Michigan law

5

depends on a three-part test. *Odom v. Wayne County*, 760 N.W.2d 217, 228 (Mich. 2008). In this case, the only pertinent element of the test was whether Phillips acted in good faith when he shot and killed the Decedent. *Latits*, 826 N.W.2d at 195. "[T]he standard is a subjective one from the perspective of [the Defendant]. *Id.* (citing *Odom*, 760 N.W.2d at 229)). "What is relevant was whether [the Defendant], in good faith, believed that he needed to fire his sidearm to protect himself and others." *Id.*

In contrast, the Supreme Court made it clear that an excessive force claim brought under the Fourth Amendment is governed by an "objectively reasonable" standard. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Such a claim is not resolved according to the perspective of the individual officer, but rather from the perspective of a reasonable officer acting under the same set of circumstances. *Id.* at 396-97. The subjective motivations of an individual officer have no bearing on this inquiry. *Id.* at 397. In resolving the Plaintiff's intentional tort claims, the Michigan Court of Appeals explicitly acknowledged that intentional tort claims brought under state law and excessive force claims brought under the Fourth Amendment are governed by distinct standards. *Latits*, 826 N.W.2d at 194-95. The conclusion of the Michigan Court of Appeals that Phillips acted in good faith does not resolve the question of whether his actions were "objectively reasonable" under the circumstances. *See Graham*, 490 U.S. at 397. Therefore, the doctrine of collateral estoppel fails to bar the Plaintiff from litigating her § 1983 claim.

The Court now turns to Phillips's argument that the Plaintiff's claim is also barred by the law of the case doctrine. "Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court in the same case." *Bowling v. Pfizer, Inc.,* 132 F.3d 1147, 1150 (6th Cir. 1998). "[W]hen a case has been remanded by

6

an appellate court, the trial court is bound to proceed in accordance with the mandate and law of the

case as established by the appellate court." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312

(6th Cir. 1997) (internal quotation marks omitted); *see also KBD & Associates, Inc. v. Great Lakes*

*Foam Technologies, Inc.*,816 N.W.2d 464, 471 (Mich. Ct. App. 2012) (identical law in Michigan).

"The doctrine also has relevance to rulings made by state courts prior to removal." *Pac. Employers*

*Ins. Co.*, 291 F.3d at 398-99.

When the state appellate court entered its order of remand, the state trial court was bound by

the ruling of the higher court. As a consequence, Phillips argues that this Court is similarly bound by

the ruling of the state appellate court. On the other hand, the Plaintiff notes that a federal court is

permitted to revisit an opinion that has been erroneously rendered by a state court. *See Pac.*

*Employers Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398 (6th Cir. 2002). The Sixth Circuit

has not directly addressed the application of the law of the case to a state appellate court ruling after

its removal, although one unpublished case implicitly supports the Plaintiff's position on this issue.

*See Ellison v. Empire Gen. Life Ins. Co. (Protective Life Corp.)*, 919 F.2d 140 (6th Cir. 1990). In

*Ellison*, the court asserted that the district court need not apply the law of the case doctrine to a ruling

by a state appellate court, if it is determined that the decision was legally wrong. *Id.*

However, it is clear that the law of the case doctrine does not apply here because the state

appellate court did not consider the Plaintiff's Fourth Amendment excessive force claim. *See*

*Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) ( "[T]he law of the case doctrine

is limited to those issues decided in the earlier appeal, and the district court may therefore consider

those issues not decided expressly or impliedly by the appellate court."). As discussed above, the

state appellate court addressed only the question relating to the Defendant's good faith, while the

issue presented to this Court is whether the Defendant's actions were objectively reasonable. As a result, the law of the case doctrine does not preclude the Plaintiff from raising her claim.

Next, Phillips maintains that the Plaintiff's claim is precluded by the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). This doctrine, however, is inapplicable to the present case. Several years ago, the Supreme Court explained that "(t)he *Rooker–Feldman* doctrine . . . is confined to. . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006) (*Rooker-Feldman* doctrine is applied by Sixth Circuit "when a plaintiff complains of injury from the state court judgment itself."). Here, as noted above, there is no state court judgment. Nor does the Plaintiff complain of injury from any state court action - the injury complained of was allegedly caused by the Defendant.

Finally, Phillips contends that the facts in this case support his belief that he is entitled to a qualified immunity defense. In support of his motion, Phillips - with reference  only to those facts contained in the order of the Michigan Court of Appeals - contends that the Court may rely on these facts without converting his motion to one for a summary judgment. The Plaintiff, on the other hand, not only maintains that these same facts in the state court opinion are outside the scope of the pleadings but challenges their veracity.

The Court agrees that it may not take judicial notice of the facts as presented in the state court opinion when considering a motion for judgment on the pleadings. In *Friedman v. United States*, 927 F.2d 259, 260 (6th Cir. 1991), the Sixth Circuit held that when considering the facts cited in an earlier

8

case, the district court erroneously "looked beyond the pleadings." In Phillips' effort to distinguish the instant case from *Friedman*, he noted that the earlier case was unpublished, whereas here the relevant earlier case is a published Michigan Court of Appeals case. This distinction is not persuasive. While the *Friedman* court recognized that the earlier case was unpublished, it did not cite this as being material to its holding. Rather it stated, "The lower court here took *judicial notice of facts* in the opinion." *Id.* Thus, the decision by the *Friedman* court to italicize the phrase "judicial notice of facts" emphasized that it was this action in particular that served as the basis for its holding. Nothing in the holding suggests otherwise or that a different result would have been reached if the earlier case were published. As a result, the Court will exclude those facts as included in the earlier opinion - as it will also exclude the extra material that had been included by the Plaintiff - and consider this motion on the basis of the pleadings.

Phillips contends that he is entitled to qualified immunity because he had probable cause to believe that the Decedent posed a threat of serious physical harm to himself or to others, including other motorists or pedestrians. On the other hand, the Plaintiff submits that Phillips acted unreasonably because the Deceased did not pose a threat to anyone.

Qualified immunity shields those government officials who perform discretionary functions from civil damages liability if their actions "could reasonably have been thought consistent with the rights they are alleged to have violated."*Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). A defendant is entitled to qualified immunity unless the facts, when viewed in a light most favorable to the plaintiff, "would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). If the Plaintiff cannot establish the violation of a constitutional right, "there is no

necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194 (2001).

The Supreme Court has held that "[w]here the officer has probable cause to believe that a suspect poses a threat of serious physical harm either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). The Sixth Circuit has further elaborated that in circumstances involving the use of deadly force while chasing a suspect in a vehicle, "the officer must have reason to believe that the car presents an imminent danger." *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005).

Phillips offers several cases in support of his motion. *See Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992); *Williams v. City of Grosse Pointe Park*, 496 F.3d 482 (6th Cir. 2007); *Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002); and *Robinson v. Arrugueta*, 415 F.3d 1252 (11th Cir. 2005). In *Freland*, the Sixth Circuit held that it was not unreasonable for an officer to shoot an escaping suspect as the suspect drove past him. The court justified this holding based on the following facts: "the suspect ran a stop sign, exceeded speeds of 90 m.p.h. on public roadways, attempted to ram a police cruiser on two separate occasions, was chased more than two and one half miles, turned his car around on a residential lawn, and intentionally crashed into the front end of a police cruiser." *Sigley v. City of Parma Heights*, 437 F.3d 527, 536 (6th Cir. 2006) (distinguishing *Freland*). Thus, based on the fact that the suspect "had proven he would do almost anything to avoid capture," the officer could reasonably believe that if he had escaped, he would have posed a threat to officers manning a nearby blockade and to people living in nearby houses (by taking them hostage). *Freland*, 954 F.2d at 347.

In *Williams*, the Sixth Circuit found that it was reasonable for the defendant to shoot the suspect as he fled in a car. The court noted that the suspect had rammed a police car and "was willing

10

to risk the safety of officers, pedestrians, and other drivers in order to evade capture," thus exhibiting "a reckless disregard for the safety of those around him in attempting escape." *Williams*, 496 F.3d at 487. In particular, the court noted that a fellow officer had been knocked to the ground and was at risk of injury if the suspect backed over him. *Id.* However, the court also considered the risk to pedestrians and drivers in the area. *Id.*

In *Pace*, the defendant officer shot a suspect after a 15-minute high speed chase that ended in a neighborhood cul-de-sac. 283 F.3d at 1277. During the chase, the suspect drove (1) at speeds of 50-60 m.p.h. through a residential lawn and (2) on the wrong side of the road, almost colliding with a motorist. *Id.* Although the suspect's car was surrounded by police cars on a dead end street, the court held the shooting was reasonable because the suspect never turned off the motor engine in his car and started to move forward as the shots were fired. *Id.* at 1278. Based on his actions during the chase, the officers had good reason to believe that the suspect would use his car as a deadly weapon. *Id.* at 1282.

The Plaintiff, on the other hand, contends that this case is analogous to *Smith v. Cupp*. In *Cupp*, the suspect, while in custody, stole a police car and began to drive away. Before he escaped, he was shot by the defendant officer. The defendant contended that the suspect had directed the car at him, and he fired in self-defense as he jumped out of the car's path. 430 F.3d at 770. The plaintiff, on the other hand, argued that the suspect was merely trying to flee and did not attempt to hit the officer. *Id.* The court denied qualified immunity because "[a]lthough Smith had possession of a dangerous 'weapon,' he was not threatening the lives of those around him with it when he was fatally shot." *Id.*

Here, the Plaintiff argues that the requested qualified immunity is similarly not an appropriate

11

defense in this case because the Deceased did not pose a threat to the officers in the immediate vicinity at the time of the shooting. However, the *Cupp* court did not limit its analysis to the threats to the nearby officers or to the danger presented by the suspect at the moment of shooting. It also considered the relevance of any danger created by a suspect during a preceding chase, noting that qualified immunity was appropriately granted where:

> there was no question that the lives of the officers, or the lives of both the officers and members of the public in the area, were endangered by the fleeing suspects. Each suspect demonstrated multiple times that he either was willing to injure an officer that got in the way of escape or *was willing to persist in extremely reckless behavior that threatened the lives of all those around.* The officers reacted with deadly force only after an *extended interaction between police and the suspect* proved that the suspect was likely to continue to threaten the lives of those around him in his attempt to escape.

*Cupp*, 430 F.3d at 775 (emphasis added). In contrast to the cases where a shooting was preceded by a dangerous car chase, the *Cupp* court noted that until the suspect started to drive away, he had been cooperative with the police, and "the danger presented by [the suspect's escape] was not so grave as to justify the use of deadly force." *Id.* at 773.

A review of the relevant case law indicates that deadly force is justified where a suspect in a vehicle (1) presents a threat to officers or civilians immediately surrounding him or (2) has demonstrated through his actions in a preceding chase that he is willing to use the vehicle in a manner that threatens other motorists or pedestrians during an escape. In his motion, Phillips alleges that during the chase, the Deceased "accelerated in the direction of several officers in numerous attempts to flee," and rammed one of the police cars.  (Def. Mot. 18).  In other words, the Deceased was "using his vehicle as a deadly weapon." *Id.* Phillips therefore asserts that he was "[i]n fear for his life and the lives of his fellow officers." *Id.* However, in a motion for the entry of a judgment on the

12

pleadings, the Court must consider the allegations as pled in the Complaint to be true. The Plaintiff alleges that (1) the Deceased did not drive at an excessive speed, (2) it was the police officers who rammed the Deceased's motor vehicle, and (3) the Deceased did not present an immediate threat to the officers when he was shot. As an analysis of the facts surrounding the parties' conduct during the chase and the moments preceding the shooting is required to determine whether Phillips violated the Deceased's Fourth Amendment right, a judgment on the pleadings is not appropriate.

IV.

For the reasons discussed above, Phillips's motion for the entry of a judgment on the pleadings (ECF No. 4) is denied.


IT IS SO ORDERED.


Date: September 30, 2013                    s/Julian Abele Cook, Jr.
                                           JULIAN ABELE COOK, JR.
                                           U.S. District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2013.


                                           s/ Kay Doaks
                                           Case Manager


13